Good afternoon. I first want to thank you for your time today and willingness to listen to oral argument in this case and I'm prepared to answer any questions that the justices might have. I will remind the court that there were three basis for the grant of summary judgment in this FMLA case. One was that my client requested FMLA only after being placed on indefinite suspension for alleged misconduct in the workplace. Two, that my client in responding to the motion for summary judgment was unable to establish that the Wynn Hotel considered my client's request for FMLA leave as a negative factor in the following decision to terminate him and that he suffered no prejudice because of that decision. And the third basis for the grant of summary judgment was that my client had previously been disciplined by the Wynn. I'd like to start with that third one. I'm sure the justices know, the opposing counsel and I have agreed to a stipulation in the motion or in the brief and in the response brief that the court erred in relying on that third factor. I would go so far as to say that remand is justified based on that finding alone. I'm not sure and I don't know any of us that any of us are capable of knowing how much weight the district court gave to that third factor. What if it was 75%? What if the court's grant of summary judgment hinged primarily on the fact that my client had been previously disciplined? We know that and I attest that neither I nor opposing counsel brought that fact to the court. It's clear that the court scoured the record to find justification to grant summary judgment in favor of the Wynn. I think that's inappropriate. And because the court engaged in that conduct, I think remand is appropriate. We just don't know how much weight went to that fact that neither I nor opposing counsel brought to the court's attention. There was no foundation for such a finding in the grant of summary judgment. My second major point would go to the court's determination that there was not a negative factor and that my client suffered no prejudice because of being terminated. The key argument I have in this case is that the Wynn does not dispute. I repeat, does not dispute that it created a unilateral obligation to comply with the mandate of the FMLA. Very specifically, the Wynn testified under oath, Paula Halshult, who was the Wynn's corporate representative, testified under oath at her deposition that my client was denied FMLA notice only because he had been placed on indefinite suspension pending an investigation of alleged misconduct. That act of creating this hurdle for my client to get notice amounts to a legal interference. It's manipulation of the rules of the law under the FMLA to avoid the employer's responsibilities to provide notice. And that's found in 29 CFR 825.220 subsection B, this idea of manipulation. Can I jump in and just ask you a question about your client's, I guess it was the affidavit or the declaration and then the follow up email. I guess I understood the Wynn to argue that, look, we didn't know that your client was seeking to take some kind of unpaid medical leave. We thought instead that he was requesting paid vacation leave. And so that's why we never were even thinking in terms of the FMLA. Your client's affidavit is rather vague on that point. I guess we don't have the first page of it. Is that correct? That's correct. I do think that the affidavit in the summary judgment setting is sufficient to create a material question of fact. The affidavit says that he had been telling his supervisor, direct supervisor, Gary Slate, in four months that he had this potential surgery coming up. The affidavit also says, which the Wynn glosses over in their opposition, it also says that his supervisor was directly aware of the August 1st surgery date prior to the date that he was placed on suspension prior to July 17th. His affidavit can be read that his supervisor knew prior to July 17th that the surgery was scheduled on August 1st. That's what the affidavit says. Let me ask you a legal question, then, because I would submit to you that both the affidavit and the follow-up email are not clear in stating that your client's intention was to take leave under the act. It's ambiguous. And so in that setting, let's just say that the employer is told by the employee, listen, I'm going to need some time off, unspecified as to which kind of time off, whether paid vacation, unpaid medical leave. I'm going to need some time off for this upcoming medical procedure, and that's all they say. Does the law require the employer to treat that as a request for leave under the act as a default because, you know, sort of the burden is on the employer to make that assumption, or does the employee have to be explicit? The case law in the Ninth Circuit very specifically says that an employee who is qualified for FMLA leave does not need to even mention the acronym FMLA. It doesn't have to be uttered. No, I know that. I know that. I know that. You certainly don't have to spell out chapter and verse and state which statutory provision you're seeking leave under. But what I'm asking is, does the employee at least have to say, I'm looking to take some form of medical leave, as opposed to here, where the follow-up email, I have to say, is, if anything, you would sort of assume that he was asking about vacation time, because that's the only kind of leave he mentioned. So, in the scenario where, yes, the employee doesn't mention the act, per se, but does the employee need to state that, but what kind of leave I want to take is some form of medical leave? No, he does not. All the employee has to do is inform the employer of a condition that qualifies for protection under the FMLA. The employee never has to ask for any type of specific leave, whether it be unpaid FMLA leave or paid vacation leave. In this case, my client can ask for paid vacation because FMLA, pursuant to the statutory provisions, is unpaid. So, even if he says, I want to have paid vacation, that doesn't negate that the qualifying leave itself is covered by the FMLA. And the employer, in this case, the WIN, has an obligation once it receives that information. My client said, I'm having a tumor removed. That notification, vague or whatever, the notification itself put the WIN on notice that it was an FMLA-covered event. He doesn't have to say, I request FMLA. He doesn't have to say, I request unpaid or paid leave. It's their obligation under the statute to then inquire further as to what the condition is, what kind of leave is going to be appropriate. They can't turn a blind eye to it. In fact, that's what the WIN did in this case. They said, because he's under suspension, we will ignore his request for leave, vague or unvague. His email and prior communications, we'll ignore them. She testified very clearly. And I have it. It's on page 72 of the deposition. She said, I asked her, is it your testimony as the representative of the WIN that my client was not told to contact a third-party FMLA provider only because he was on suspension? And she said, yes. We didn't tell him to contact our third-party provider because he was on suspension. That act is, by itself, interference. Let me ask you a question, Mr. Gephardt. I think the way the district court dealt with this, right or wrong, so I want you to respond to it, was to say, look, it really doesn't matter because they would have fired him for other reasons before he could have taken, before he wanted to take leave. Correct. And so even assuming that all these notice issues turn out in your favor, it seems to me the district court's holding was you haven't established that he wasn't, that he was fired for requesting the leave. The record, the district court says, is open to only one conclusion, which is that he was fired for watching the movie. Correct. And so let's assume all the facts that you've now stated in light most favorable to you, that a request was made, it was appropriate, it was specific enough to put them on notice that he eventually wanted to take leave. And then in the meantime, this thing happens. He watches the movie and they say, that's a firing offense. We're suspending you, we're going to investigate and see if you did it. We're now going to fire you. And the district court says, therefore, you weren't harmed by any FMLA violation. Respond to that. In Sanders v. City of Newport, a Ninth Circuit case, the Ninth Circuit said it's the employer's obligation, duty, to prove a legitimate reason to deny continued employment when there's been a request for FMLA leave. So they come in and say, your client's an at-will employee, I take it. You're not supposed to be watching videos at work. And he was. He doesn't dispute that. No, he disputes why he was watching TV. But here's the answer to your question, Your Honor. Is it improper at the summary judgment stage, it's improper for the district court to give credibility to the Wynn's investigation. It's improper to make inferences in favor of the Wynn. It's improper to weigh the evidence that is hotly disputed to support the decision to terminate. Well, tell me what's disputed. That's why I'm asking. It's not disputed that he watched the video, correct? Correct. My client's affidavit, his statement that was provided on July 24th said, yes, I was watching television. If you had asked me, I would have told you why. I was repairing this monitor that had been constantly used to provide information to employees. The monitor wasn't working. So I sat down with some co-workers and I asked them to put some video on a laptop while we repaired this monitor. That's what they saw. And yes, we were watching it. And the statements that were obtained from my client's co-workers and subordinates, they both say, yes, content was put on the television. But those affidavits are so vague and ambiguous, they don't say, for example, neither of them say, we put the video on the television for the purpose of watching TV and not working. What does your client's affidavit say on this? It very clearly says we put content on the TV to repair it. When we first put the content on, the video disappeared to the left side twice. We rebooted it a couple of times. We kind of got it working. But then it was coming up on five o'clock, time for the new shift to come in. So we shut it all down. We never got it fixed. Nobody disputes that. The affidavits that the wind obtained from my client's co-workers say, yes, content was put on the TV and that's the end of it. They're so vague. You would think that if the wind was going to terminate an employee with 10 years of stellar, outstanding performance based on the allegation of watching TV for 30 minutes instead of working, that they would have asked the co-workers to clarify. Were you watching TV for purely social, personal positions or were you repairing it as Mr. Rouse says you were? They don't even ask that question. And those affidavits, all of the affidavits in support of the termination account to maybe 12 sentences. Not a single sentence says anything that disputes my client's statement, which says we were repairing a TV, which is perfectly okay. One of the other things that's really important is the wind never tested the TV to see whether it needed repair or not. Now you're making a jury argument, which I take it you're arguing you're entitled to make. The question is what creates an issue of fact on pretense here? And I think your answer is it's your client's affidavit. It's not the absence of detail in the other affidavits. It's your client's affidavit. That's my client's statement provided to the WEN prior to the date that they were to provide notices. The statement was on the 24th. The notices that he was required to receive under the FMLA were due on the 26th and then he was terminated on the 28th. No, no, let me ask this again. The statement, what I want to know is where in the record he says I was testing this for a legitimate purpose. It's at, in the second set of exhibits at page, beginning on page 148. Okay. The statement, and he very clearly articulates how and why the television was on. The statements obtained by the WEN in support of termination don't conflict with that statement. It doesn't matter. It doesn't matter whether they conflict or not. My question, my question is you've got it. They come forward and say, although we're not doing Title VII balancing here. Look, this guy violated our rules. He watched the video. And his answer is I watched it, but I wasn't violating your rules because I was testing the system. That creates a fact issue about whether or not he was really fired for violating the rules or not. You might lose that at trial. But it also begs the question, was that investigation tamper, was that investigation improperly influenced by the fact that my client had requested FMLA leave? And by the way, your honors, the law in the Ninth Circuit doesn't use the McDonnell Douglas shifting burden shift. No, I understand. All my client had to do was establish that he was eligible, that he requested, that he was denied leave, which he was, and they admit that they manipulate the rules by refusing to provide leave noticeably to somebody who's under suspension. That by itself is interference. And then therefore, the last point you want to ask me about was, was he prejudiced? My client's affidavit says, the statement says, I would have rescheduled my throat surgery, my surgery to occur while I was covered by insurance. If they had told me, if they had told me that I was not going to get FMLA leave, I would have rescheduled my surgery. It would have occurred. I would have been covered by insurance. That's my damage. The court ignored all of that and gave it no, no, no mention in the decision whatsoever. I think what is the standard? I'm sorry. Just just for a quick question. So the standard is that the the the there is a negative factor test, correct? That is correct. My client satisfied that burden by establishing that he requested leave prior to being put on suspension. The same person who received that notice, the very same person is the same exact person who suspended him immediately thereafter. The same person that conducted this, what could be a very sketchy investigation, the same person that reached the conclusion that my client engaged in misconduct, which he hotly disputes, and the same person that terminated him. So so the witness admits that there's the absolute connection between FMLA and discipline. That connection is if you are suspended, you are denied notice. Well, that connection itself is all my client needs to prove interference. They then it's the wind that tries to get out of it by saying, yes, we if even if we interfere, so what we would have terminated him anyway. And under the standards case, that determination of credibility and weighing of evidence and credible inferences to be made, they cannot be made at the summary judgment stage, your honors. Those are factual issues that must be resolved upon a full presentation of evidence. There's only one case that the defendants or the wind mentions in its response brief. And that is the Barnett case, which comes out of Sixth Circuit. And they rely on this case very heavily and they compare it to the facts of this case. But what they didn't tell you in that case is the facts are completely different. In the Barnett case, an employee was put on suspension and she admits that she was put on suspension. And then days later, she requested leave days later. During her deposition, she lied to the employer and then the employer called her and said, we know you're lying. We're going to terminate you. We're going to allow you to resign. And she resigned. She resigned prior to the five day notice period running. That's not what happened in this case. The five year period, the five day period ran before my client was terminated. That's my client suffered injury, prejudice while still employed in that Barnett case that the wind relies on so heavily. The courts in its in its decision set from the outset. The argument that the lack of notice is a basis for reversal is that this doesn't stand. She quit before that notice period came. So she's not entitled to notice because she was fired. But that's not the facts. My client was fired before he was fired. But the notice period had already run. And then now they're saying, well, you just focus on the termination. Ignore our violation of the FMLA. Ignore it. It's irrelevant. What the wind would have this court believe is that an employee can request leave. They can intentionally deny notice, which they admit they do intentionally deny notices, conduct an investigation. And as long as there's an ultimate termination, no, any violation of the FMLA is excused. If that's the case, we have to then get back to this. Is the termination justified or is it pretextual in covering up the violation of the FMLA? I think that's what's happened here. Let me stop you there. Judge Ferguson, do you have additional questions for counsel for the plaintiff? Thank you very much. I'm fine. Thank you. We'll give you a couple minutes for rebuttal. Let's hear from counsel for the women. Good morning, Your Honors. My name is Scott Abbott. I represent the appellee in Las Vegas, LLC. I think, as the court pointed out, there are a couple of issues that warrant the affirmance of the district court's award of summary judgment to my client. In this circuit, an FMLA interference claim is measured under the Batchelder case by whether an FMLA leave request is used as a negative factor in an adverse employment decision. What the district court found in its summary judgment order was that the plaintiff, Mr. Rouse, failed to show that there was a negative factor used for his leave request, whether it was considered an FMLA request or a vacation leave request or some other type of leave request. There was simply nothing there other than the timing that was being alleged that he sent this email on July 19th, and he was terminated nine days later. Now, what's important on that chronology... Let me ask you... Hang on a second. Let me ask you about that. Sure. Because I guess I read the district court's order as basically refusing to credit what Mr. Rouse said in his declaration, and instead said, well, no, the first time the win learned about any request for leave was in the email, but that was after he had already been placed on suspension. And it seems as though there's a factual dispute as to whether Mr. Rouse's declaration should be given weight or not. Maybe you can respond to that point. Sure. I mean, the jurisprudence on this is that the affidavit, which the court has already pointed out through your questioning to opposing counsel, is that it's very vague. Both the affidavit and the email that followed it are extremely vague. In fact, the declaration that is relied upon so heavily states in paragraph 9, and this is very important language, it says that Slayton and Hoffman, the supervisors, were aware of my possible need for surgery for months. There's no detail in there whatsoever about whether Mr. Rouse actually made them aware, when he made them aware, what were the circumstances, whether they required some follow-up or a confirmation, as he later contends in his brief. There's just nothing there. And then what's interesting is in that same affidavit later, and this is on page 79 of the record, in paragraph 16 he says, and I'm quoting, if I hadn't asked for leave after being put on suspension, and then he goes on to say he doubts he would have been treated more harshly disciplinary-wise than his subordinate employees. And that's an important distinction, because if, as Mr. Rouse is contending in his declaration, his supervisors were put on notice of a possible need for leave for months beforehand, that undermines his temporal proximity argument. It undermines it, but we're not, when we're dealing with summary judgment, we're not dealing with undermining or putting stuff on scales. We're trying to figure out whether or not any reasonable juror could find that it was a negative factor. And so what I'm interested in is, let's assume that the prior notice, whatever it was, and the email, were sufficient to put your client on notice that he wanted to take leave. The question for him to prevail, he has to show that that was a negative factor in his termination, right? Correct. Okay. And so I want to focus on that, because that's what the district court focused on. Right, and what I would say in response... Let me finish my question. He says, here I am, a 10-year employee. I watched a video for half an hour. I had a good explanation for it. I was put on suspension while they investigated it. I requested leave again, and maybe it's for the first time, and then I get fired. Why doesn't that create a fact question about whether or not his request for leave was a factor in his termination? Because he doesn't offer anything to support that. In terms of a leave request, as other cases that they have pointed out, there has to be some showing beyond just mere timing of events. No, I'm asking the question differently. Let's assume that the mere timing is not enough. Okay. But I must say that this termination doesn't strike me as gross misconduct. I understand that it's your right to fire your employees for whatever reason you want. He says, I was testing the video system. I watched something for half an hour. And that's what he says. He may be wrong. But why doesn't a finder of fact get to determine whether that was just a pretext? Because the court would need to determine, as the court determined, that the leave request was a negative factor in the decision to terminate. Mr. Rouse wants to focus on the merits of the termination and the investigation. And the issue is that's misguided. What needs to be focused upon is he had already committed the alleged misconduct before he was suspended and before his email came in asking for the vacation leave. The investigation was already in progress for the misconduct. It's not enough to say that the termination, in his opinion, wasn't proper in the sense of it wasn't enough or the punishment didn't fit the crime. His obligation to overcome sobering judgment is to show that his leave request was used as a negative factor. And there's nothing in the record at all, even in his affidavit, in any of the briefing, in any of the discovery, that says that his supervisors ever expressed any negative reaction, animosity, or bristling to his request for leave whenever it was made. And the cases that we've cited, particularly the Matthews case that comes out of Arizona, says mere knowledge of someone's FMLA activity or request is not enough to carry your whole case. And that's what Mr. Rouse is arguing here. And the Matthews case that we cited in our brief has said, you've got to nudge it towards something more. And that's what the district court found was lacking here. The something more is missing. Let me give you a hypothetical. It's not what happened here. Let's assume all the same facts, except that what Mr. Rouse is accused of is arriving at work one minute late. He can be fired for arriving at work one minute late. And we have exactly the same record, and he's fired. Would he have created a fact issue that went to the jury on whether or not his FMLA request was a factor? No. No matter how questionable the pretense, he has to show something more. He has to show that they act. He has to have direct proof that they took his request into account. He's got to have some proof, Your Honor. He doesn't have any proof. Is a firing, and I'm not suggesting that's the case here, is a firing that appears on its surface to be pretextual, enough to create an issue of fact about whether the FMLA request was the real reason for the firing? No. In my opinion on that, Your Honor, would be in response to that, no. Because even if you were to use traditional notions of pretext, to overcome pretext, you've got to provide specific evidence of why you think it was pretextual. And just because he believes that his explanation should have been worthy of more credence than the WINS investigation gave it, is not enough. He's got to come forth with specific evidence. In the Title VII context, you have to have Title VII requires specific evidence of pretext. And I would argue that that's the same here if we're using a pretext analogy, but in this case, we're using the negative factor. And the negative factor, as the district court correctly found, was there's no evidence that was put forth by Mr. Rouse to suggest that there was any supervisory animosity toward him or his request to leave. Don't you look at the totality of the circumstances? Isn't that a jury question? I mean, you know, he says he gave notice months before. Maybe it wasn't great notice, but he says he gave notice. There's a tribal issue of fact. You know, he says, I've worked there 10 years. You know, they terminated me. Judge Hurwitz gave an example of what if he'd worked there a lot longer? What if it was the most de minimis violation? What if he'd worked there 40 years and he was a minute late? Would your answer be the same? My answer would be the same under those facts because, again, we're dealing with a very narrow framework here for an FMLA interference claim. Now, perhaps if he was alleging some employment discrimination claim. Aren't you pushing a big boulder uphill if the only standard the law requires is a factor, period? You know, we call it a negative factor, but it's just simply a factor. That's correct, but the issue is there's a complete absence of evidentiary support to show or even tend to indicate that the decision about termination was influenced or tainted or in any way affected by a request for leave. Can I ask a question on a separate topic? And that's the notice issue that Mr. Rouse raises, which if I can rephrase it for him, I'm sure he could do it better, counsel could do it better, goes like this. Focusing only on the email, you know, at that point you should have known I was requesting time off to get an operation. You should have given me, but you never responded to it. Had you responded to it and given me the notice that the FMLA requires, I would have either had it while I was, I would have had it right away before you fired me or at least while my insurance was still in effect. But you never did. What's your response to that? Well, I think, you know, the issue as we briefed the issue is that there's been no prejudice here just given the timeline of events, because what Mr. Rouse is essentially arguing in terms of the lack of notice is he takes issue with the fact that his supervisor didn't direct him to WINS FMLA third-party administrator BASIC to commence the process of requesting FMLA leave. And he says by not doing that, the required notices were not furnished. And as we posed in our brief, it wouldn't have made any difference and certainly would not have prejudiced him even if the supervisor had directed him to BASIC. Because what would have happened as what happened in 2013 when he previously took FMLA leave and was familiar with the BASIC process is they are the ones who generate all the required notices, including the certification of health care provider. They would have, in the ordinary courts, given him time, 15 calendar days under the FMLA, to get his certification completed from his health care provider. And in the meanwhile, the timeline doesn't bear out his argument of prejudice. Because if, as Mr. Rouse contends, the notices were due by July 26, and let's say he had them in hand by July 26, so there was no notice issue. Two days later, the WINS terminated him. And he goes to great lengths saying, well, if I had known at the time I requested the leave that my employment was in jeopardy or that I was taking this seriously, because he wasn't taking it seriously, he didn't really think this was an issue, then he would have changed his circumstances. But the fact is he wouldn't have changed his circumstances because we have in the record the fact that BASIC only deals with FMLA. They would have no knowledge of his employment status in terms of being on suspension, pending investigation, or possibly under threat of termination. So they would have, in the ordinary course, given him the notices, and he would have gone on his merry way to get them completed. And what would have happened is two days later, by the 28th of July, he would have been terminated. And that would not have thwarted anything for an upcoming surgery in early August or his planned time starting on August 3rd. So our position in response to that argument is, even if you claim that you were improperly denied notice, you were not prejudiced. And when you're not prejudiced under that timeline of events that I just stated, the Supreme Court said in the Ragsdale case, an FMLA violation, particularly a requirement of notice, is not actionable, in that case it was a designation notice, unless the employee is prejudiced. And as the district court correctly found here, there was no prejudice occasioned to Mr. Rouse in these circumstances. Okay. Judge Fragerson, any further questions for counsel for the win? No, I'm fine. Okay. Excellent. Thank you very much, counsel. Let's put two minutes on the clock for counsel for Mr. Rouse. First and foremost, I'd like to point the court's attention to 29 CFR 825-300, subsection A3. Everything the opposing counsel just said about what BASIC does, what BASIC's requirements are, should be ignored. The law requires a company like WIN to have a handbook that outlines very specifically the duties and responsibilities of an employee requesting FMLA leave. The record is devoid of a single paragraph or paper identifying that policy or procedure. So everything counsel said is just hearsay. We don't know what WIN's policy is. If there is one, they did not comply with the law. Have they ever proven to this court that they have? I know that we're all concerned about. Focus on this very important, undisputed fact, that Paula Hulshut, the corporate representative of WIN testified under oath that my client was not told to contact BASIC only because he had been put on suspension. They conditioned their responsibility under the FMLA based on an allegation of misconduct. There's a direct tie to FMLA and discipline. If you request FMLA but we're investigating you, we will ignore your FMLA rights. But the WIN now asks you to ignore that exact link by saying, well, now you have to prove that requesting FMLA actually resulted in termination. Nobody's going to come forward from the left and say we fired him because he requested FMLA. We have to look, I think as one of the justices said, we have to look at the big picture. Nobody has asked the WIN, and I wish your honors would, why does the WIN have a policy of denying leave, the notice of leave, or denying notices of FMLA rights when an employee is on suspension? That's never been discussed. And that itself, by itself, is illegal interference under the law in titling my client to a trial. It's illegal. The case law says so. The statute says so. You can't condition compliance. Thank you. Thank you, counsel. Case just argued is submitted.
judges: Watford, Hurwitz, Pregerson